UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CATHERINE T. ANDROUS, *et al.*, *Plaintiffs*, v. THOMAS THEODORE ANDROUS, *Defendant.* | No. 1:24-cv-01305-MSN-WEF |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Remand this case to state court (ECF 2). Finding that this Court has jurisdiction and that the case was properly removed in accordance with 28 U.S.C. § 1441, the Court will deny Plaintiff's motion.

**I.    INTRODUCTION**

   **A.    Statutory Framework**

Under the federal removal statute, 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." However, in cases where the sole basis for federal jurisdiction is the diversity of the parties under 28 U.S.C. § 1332(a), removal is improper if "any of the parties in interest properly joined and served as defendants is the citizen of the State in which such action is brought." *Id.* § 1441(b)(2). That is, a party typically may not remove an action to federal court on the basis of diversity if any defendant resides in the state where the case has been brought. However, some courts, following the plain text of the rule, have allowed for "snap removal" by which a forum defendant may remove a case to federal court on

basis of diversity of citizenship before he is "properly joined and served" in the state court action. *See, e.g.*, *Spigner v. Apple Hosp. REIT, Inc.*, 2022 WL 1451397, at *5 (E.D. Va. Mar. 1, 2022).

### B. Procedural Background

On July 22, 2022, Plaintiffs[1] filed this action in the Circuit Court of Fairfax County, Virginia against Defendant Thomas Theodore Androus. ECF 2-1 ("MTR") at 2. One week later, Defendant removed the case to this Court, noting that he had not been served with a copy of the summons and complaint. ECF 1 ¶ 2.

On July 31, 2024, Plaintiffs moved to remand this case to state court, arguing that snap removal should not be permitted under these circumstances. ECF 2, 2-1. Defendant filed his opposition to Plaintiffs' motion on August 14, 2024, ECF 5 ("Opp."), and Plaintiff filed a reply on August 16, ECF 6 ("Reply"). The motion is now ripe for resolution.

## II. DISCUSSION

The parties do not dispute that complete diversity exists, and that the Court therefore has original jurisdiction over this civil action in accordance with Section 1441(a). *See* MTR 2. The question before the Court is simply whether snap removal is proper and a "forum defendant can[] rely upon his own lack of service to defeat the form-defendant rule in Section 1441(b)." *Id.*

### A. The Parties' Arguments

Plaintiffs argue that this Court should follow a prior decision from this District in *Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800, 810 (E.D. Va. 2013). MTR 3. The court in *Campbell* held that "permitting removal" in cases like this one was "so absurd a disposition that not reasonable person could intend," such that it could ignore the "plain meaning of the term 'served.'" *Id.* at 809. The *Campell* court, Plaintiffs point out, determined that it must therefore

---

[1] The Plaintiffs in this case are Catherine T. Androus, both individually and in her capacity as trustee of the Theodore S. Androus Trust, Ezra B. Androus, and Zachary T. Androus.

"give[] the word 'served' some alternative meaning that avoids" the consequence of snap removal, and thus read "'served' to mean 'actual notice and involvement in the case.'" *Id.* at 810. Plaintiffs acknowledge this District's later decision in *Spigner*, which permitted snap removal, but attempts to distinguish it on the ground that in that case there were two Virginia forum defendants and one non-forum defendant in Maryland, all three of which removed the case prior to service. MTR 6 (citing *Spigner*, 2022 WL 1451397, at *1).

In his opposition, Defendant argues this Court must simply follow Section 1441(b)(2)'s plain language. Opp. 2. Defendant further acknowledges that there is a split of authority in the district courts—and in this district—as to the propriety of snap removals, but argues that the weight of authority supports snap removal, pointing to the decisions from three courts of appeals. *Id.* (citing *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705-706 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152-154 (3d Cir. 2018); *Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485–87 (5th Cir. 2020)). Defendant argues that the bar for finding a statute's plain meaning "absurd" is high, and is not met here, Opp. 3-4, and that *Campell*'s gloss on the forum defendant rule would render it inconsistent other statutory provisions. Finally, Defendant points out that Congress is "aware of the issue but has not acted to change the plain meaning of the statute," and that the courts should therefore not "step into Congress' shoes and rewrite" it. Opp. 4-5 (citing Removal Jurisdiction Clarification Act of 2020, H.R. 5801, 116th Cong. (2020)).

In their reply, Plaintiffs insist that "*Campbell* and *Spignor* [sic] form one consistent approach" such that "when a solitary defendant is a resident of Virginia, he cannot defeat the forum defendant rule" via snap removal. Reply 1-2.

**B.  Persuasive Authority**

The Fourth Circuit has not decided a case involving snap removal. The Court will therefore rely on a range of persuasive authority including decisions in this district, from other courts of appeals, and from other district courts in the Fourth Circuit.

1. *Campbell*

The court in *Campbell* faced a situation much like the one here. Two North Carolina-resident plaintiffs filed a complaint against two Virginia-resident defendants in the Circuit Court for the City of Norfolk. 925 F. Supp. 2d at 802. Several months later, the defendants removed the case to this district after they had not been served. *Id.* at 803.

Judge Morgan first considered the plain meaning of Section 1441(b)(2) was unambiguous, as "the literal meaning of 'serve'" indicates the "delivery of a summons to appear and respond in court." *Id.* at 809. "The question, then, [was] whether the result of the statute's plain meaning—permitting removal so long as forum-defendants remove before a plaintiff can serve them—is so absurd a disposition that no reasonable person could intend, that is 'so gross as to shock the general common [] sense.'" *Id.* (quoting *Hillman v. I.R.S.*, 253 F.3d 338, 342). Judge Morgan next considered that "[t]he purpose of federal jurisdiction is to avoid possible prejudice to an out-of-state defendant," a concern that is not implicated when the defendant is sued in her home forum. *Id.* In light of this, he determined that "permitting a forum defendant to appear and seek federal jurisdiction for an action through removal, whilst simultaneously asserting that it cannot be barred from removing because it has not been properly made party to the action—through delivery of summons and a copy of the complaint—is patently absurd." *Id.* at 809-810.

When a court determines that a statute produces an absurd result, its task is to give it "some alternative meaning that avoids this consequence." *Id.* at 810 (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring in the judgment)). In *Campbell*, Judge

4

Morgan construed "serve" to mean "actual notice and involvement in the case" rather than delivery of a summons and complaint. *Id.* Since the forum-state defendants in *Campbell* had such notice, the case was remanded to state court. *Id.*

### 2. Intervening decisions by the courts of appeals

In the years since *Campbell* was decided, several courts of appeals have issued published opinions reaching the opposite holding and permitting snap removal in accordance with Section 1441(b)(2)'s plain text.

### i. *Encompass*

The first such decision came from the Third Circuit. In *Encompass*, an Illinois plaintiff sued a Pennsylvania defendant in Pennsylvania court. 902 F.3d at 149. The parties corresponded about the case by email, with the Defendant even agreeing to accept service electronically instead of requiring formal service. *Id.* at 150. The plaintiff emailed the Complaint and an acceptance form to the defendant, which removed the case instead of formally accepting service. *Id.* The district court denied remand and dismissed the complaint, after which the plaintiff appealed. *Id.* at 150-151.

The Third Circuit began by concluding that Section 1441(b)(2)'s text was unambiguous: "Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." *Id.* Applying circuit precedent as to absurdity, it examined whether "the most extraordinary of contrary intentions in the legislative history [could] justify a departure from that language." *Id.* (quoting *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 170 (3d Cir. 2015). Looking to the operative language—"properly joined and served"—the court found that its "specific purpose" was not obvious, but may have been intended to allow for removal in cases where fraudulent joinder is utilized to destroy diversity. *Id.* at 153. The Court determined

5

that while allowing removal in this particular case would not further that purpose, it would not be absurd for Congress to "address[] a specific problem . . . with a bright-line rule," and that "[p]ermitting removal here" did not directly contradict the purpose of preventing fraudulent joinder. *Id.* The Third Circuit therefore held that while "this result may be peculiar," it was "not so outlandish as to constitute an absurd or bizarre result." *Id.* at 153-154.

### ii. *Gibbons*

In *Gibbons*, a number of Plaintiffs sued two Delaware-incorporated businesses in Delaware state court, and Defendants removed the cases to federal district court shortly thereafter. 919 F.3d at 702-703. The Federal District Court for the District of Delaware declined to remand the cases to state court, and they were then transferred to the Southern District of New York, which dismissed Plaintiffs' claims. *Id.* at 703-704. Plaintiffs appealed to the Second Circuit, arguing that removal was improper. *Id.* at 704.

Finding that the plain text of Section 1442(b)(2) was unambiguous, the Second Circuit considered whether it should be set aside under the canon of absurdity. *Id.* at 705. Under Second Circuit precedent, such judicial intervention is warranted "only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone." *Id.* at 705-706 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 845 F.3d 492, 517 (2d Cir. 2017)) (cleaned up). The Second Circuit found that while Congress's purpose in requiring defendants to be "properly joined and served" was to protect defendants from gamesmanship through fraudulent joinder, "[a]llowing a defendant that has not been served to remove a lawsuit to federal court 'does not contravene' Congress's intent." *Id.* at 706 (citing *Encompass*, 902 F.3d at 153). The court further considered the fact that allowing snap removal

6

would mean defendants in states that "require a delay between filing and service" will be able to remove cases to federal court, while those in states "that permit a plaintiff to serve an action as soon as it is filed" may not. *Id.* The court determined that such "state-by-state variation is not uncommon in federal litigation" and the "existence of variation" need not displace Section 1441(b)(2)'s plain text. *Id.* (citing *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-355 (1999)).

### iii. *Texas Brine*

The Fifth Circuit in *Texas Brine* reached the same conclusion as the Second and Third Circuits. The case involved a Texas plaintiff suing two Louisiana defendants and one New York defendant in Louisiana court. 955 F.3d at 484-485. Before any of the Louisiana defendants had been served, the New York defendant removed the case to the United States District Court for the Eastern District of Louisiana. *Id.* at 485.

The Fifth Circuit too found that the plain text of Section 1441(b)(2) allowed for removal, so the only question was whether the canon of absurdity applied. *Id.* at 486. The Court looked to Scalia & Garner to hold that a statute would be found absurd only if the result of the plain text were one that "no reasonable person could intend." *Id.* (citing Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 237 (2012)). That is, even if the court "believed there was a 'drafter's failure to appreciate the effect of certain provisions,' such a flaw by itself does not constitute an absurdity." *Id.* (citing Scalia & Garner 238). Like the Second and Third Circuits, the Fifth Circuit agreed that "a reasonable person could intend the results of the plain language." *Id.* (citing *Gibbons*, 919 F.3d at 706).

7

### 3. *Spigner*

In *Spigner*, the other snap removal case arising in this district, Judge Novak considered both *Campbell* and the above-described cases in the courts of appeals. 2022 WL 1451397 at *3. *Spigner* involved a suit by a Florida plaintiff against two Virginia defendants and one Maryland defendant in Virginia court, all of whom jointly removed the case to this district. *Id.* at *1. Finding "no ambiguity" in Section 1441(b)(2), Judge Novak proceeded to consider "whether one of the rare exceptions to the plain meaning rule applies." *Id.* at *4. No exception applied, *Spigner* held, because "[a]llowing [d]efendants to circumvent a procedural rule created for a purpose unrelated to the circumstances of its case does not rise to absurdity." *Id.* at *5. The *Spigner* court also drew a slight contrast to *Campbell* on the ground that "one of the three defendants" was "a non-forum defendant" meriting protection from prejudice in out-of-state court. *Id.*

### 4. Other decisions in this Circuit

The Fourth Circuit has not opined on the propriety of snap removal. However, several other district courts have reached varying conclusions. Several have refused to permit snap removal in decisions subsequent to the series of courts of appeals cases beginning with *Encompass*. For instance, the District of Maryland has "decline[d] to permit snap removal" on the ground that "the forum defendant rule 'was designed to prevent gamesmanship.'" *Kirst on Behalf of Nominal Defendant Novavax, Inc. v. Erck*, 616 F. Supp 3d. 471, 477 (D. Md. 2022) (quoting *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 725-727 (D. Md. 2017)); *see also Turtle Factory Building Corp. v. McGrath Real Estate Holdings, LLC*, 2021 WL 688697, at *3 (D.S.C. Jan. 28, 2021) ("[T]he literal application of § 1441(b)(2) is contrary to congressional intent and creates absurd results.").[2] But at least one other district court has permitted snap removals, finding

---

[2] These decisions cite to the Eleventh Circuit's decision in *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014). In that case, defendants snap removed complaint to federal district court prior to service, after which the plaintiff

Section 1441(b)(2)'s "plain meaning is not clearly contrary to congress' intent nor so absurd that it cannot be given its plain meaning." *Blankenship v. Napolitano*, 2019 WL 3226909 (S.D.W.V. July 17, 2019).

### C. Analysis

Having reviewed the parties' briefs and the developing body of law around snap removal, this Court finds it must adhere to Section 1441(b)(2)'s plain text and that Defendant's removal was proper.

To begin with, no party seriously contests that Section 1441(b)(2)'s plain meaning permits snap removal. In order to deviate from that plain meaning, one of two exceptions must apply. The first comes into play "when literal application of the application of the statutory language produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary." *Hillman v. IRS*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000). The second applies when the plain meaning "results in an outcome that can truly be characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common sense." *Id.* (quoting *Sigmon*, 226 F.3d at 304). "[I]f it is plausible that Congress intended the result compelled by the Plain Meaning rule, we must reject an assertion that such an application is absurd." *In re Sunterra Corp.*, 361 F.3d 257, 268 (4th Cir. 2004) (citing *Sigmon Coal*, 226 F.3d at 308).

The first *Hillman* exception does not apply, since Plaintiffs do not argue that the application of Section 1441(b)(2)'s plain meaning is "at odds with clearly expressed congressional intent." *Id.*

---

moved to voluntarily dismiss the case without prejudice "so that she could refile the case in state court in such a manner as to . . . preclude a second removal." *Id.* at 1218-1219. The defendants appealed, claiming that permitting dismissal would abridge their "right of removal," but the Eleventh Circuit upheld the dismissal, holding it was within "the district court's discretion . . . to undo *Defendants'* gamesmanship in the circumstances at bar." *Id.* at 1221.

9

As courts have noted, "the legislative history provides no guidance" as to the intent behind the "properly joined and served" language. *Encompass*, 902 F.3d at 153. Plaintiffs thus contend this Court must follow *Campbell* and hold that Section 1441(b)(2)'s plain meaning is absurd. MTR 7 ("Permitting Theo to appear and seek federal jurisdiction through active removal while simultaneously asserting that he cannot be barred from removing because he has not been property [sic] made a party to the action . . . is patently absurd.").

This Court agrees with the Second, Third, and Fifth Circuits, as well as this District's prior decision in *Spigner*, that Section 1441(b)(2) does not meet the high bar for absurdity that would permit judicial revision of its plain text. Every court to consider the question of Congress's intent when including the "properly joined and served" language in Section 1441(b)(2) has determined that it was an effort to prevent gamesmanship by *plaintiffs*, who might attempt to destroy federal diversity jurisdiction and prevent removal through fraudulent joinder. *Encompass*, 902 F.3d at 153 ("[C]ourts and commentators have determined that Congress enacted the rule 'to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.'") (citation omitted); *Gibbons*, 919 F.3d 699 at 706; *Texas Brine*, 955 F.3d at 486; *Goodwin*, 757 F.3d at 1221. It is eminently "plausible" that Congress intended to address the issue of fraudulent joinder with a "bright line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons*, 919 F.3d at 706. As with any bright-line rule, this leads to some unusual consequences, and snap removal, one such consequence, "may seem odd, but it is not absurd." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005). The fact that a clear rule such as the one Congress drafted is susceptible

to gamesmanship under certain circumstances is not "so gross as to shock the general moral or common sense." *Hillman*, 253 F.3d at 342.

Nor can Plaintiffs draw a coherent approach that would align *Spigner* and *Campbell* and prohibit removal here on the ground that the only defendant resides in Virginia. *See* MTR 7; Reply 2. While *Spigner* noted that "one of the three defendants" was a "non-forum defendant" and it would "not contravene common sense" to allow that defendant to remove, 2022 WL 1451397 at *5, the rule articulated in *Campbell* would have prevented even the out-of-state defendant in *Spigner* from removing the case to federal district court because the Virginia defendants in *Spigner* had "actual notice and involvement in the case." Even more concerningly, *Campbell*'s alternative to the statute's plain meaning could *prevent* removal in circumstances where Congress obviously meant to allow it. It is hardly inconceivable that a fraudulently joined defendant might have "actual notice and involvement in the case" in the manner of the Defendants in *Campbell* or *Spigner*, which could then prevent removal where Congress intended.[3]

The result of this is that the courts disallowing snap removal do so not by providing some "alternative meaning" to Section 1441(b)(2)'s words, but by reading the forum-defendant rule's prohibition on gamesmanship in the form of fraudulent joinder as a general mandate to prevent any and all gamesmanship in the removal context. *See Kirst*, 616 F. Supp. 3d at 477; *Turtle Factory*, 2021 WL 688697, at *3. Congress is well aware of how to provide federal courts with discretion to manage their dockets in the interest of justice. *See, e.g.*, 28 U.S.C. § 1404(a); *id.* § 1367. The fact that it has not done so here should give courts pause before arrogating to themselves the discretion to determine whether impermissible gamesmanship has occurred and remand cases accordingly.

---

[3] Plaintiffs ignore that in *Gibbons* and *Encompass*, the only defendants were, as here, forum-state defendants.

Finally, the consequences of allowing snap removal here may be less odd or unjust than cases reaching the opposite conclusion suppose. While this Court is bound by the plain language of Section 1441(b)(2), it retains discretion under Fed. R. Civ. P. 41(a)(2) to dismiss an action without prejudice (at a plaintiff's request), including so a plaintiff may refile in state court. *See Davis v. USX Corp.*, 819 F.2d 1270, 1273-1276 (4th Cir. 1987) (holding that court-ordered voluntary dismissal of action so that plaintiff could proceed in state court did not constitute an abuse of discretion).

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion to Remand (ECF 2) is **DENIED**.

It is **SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

August 30, 2024
Alexandria, Virginia

12